

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RICARDO GUTIERREZ, §
§
    Petitioner, §
§
v. § 2:05-CV-0271
§
NATHANIEL QUARTERMAN, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
§
    Respondent.[1] §

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner RICARDO GUTIERREZ, has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 242nd Judicial District Court of Swisher County, Texas, for the felony offense of aggravated sexual assault of a child.  For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
## PROCEDURAL HISTORY

Petitioner was charged in cause number B2720-9209 with the offense of aggravated sexual assault of a child.  On December 16, 1992, he entered a plea of guilty in exchange for a ten-year sentence, probated for five years, and a $1000 fine.  It appears the State filed four motions to revoke

---

[1]  The previously named respondent was Douglas Dretke, who was succeeded by Nathaniel Quarterman on June 1, 2006, as Director of the Texas Department of Criminal Justice, Institutional Division.  Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Quarterman is automatically substituted as a party.

petitioner's probation beginning in February of 1994, but each time the trial court did not revoke petitioner's probation, it continued petitioner on probation. On July 18, 1996, and September 27, 1996, the State filed additional motions to revoke probation. The trial court, on December 10, 1996, revoked petitioner's probation and imposed the original ten-year sentence.

Petitioner appealed the revocation proceeding and on October 15, 1997, the Seventh District Court of Appeals denied the appeal. *Gutierrez v. State*, No. 07-96-0443-CR, 1997 WL 634367 (Tex. App.—Amarillo Oct. 15, 1997, no pet.). On July 30, 1998, petitioner filed an application for a state writ of habeas corpus challenging his conviction. *Ex parte Gutierrez*, App. No. 38,985-01. On October 28, 1998, the Texas Court of Criminal Appeals denied relief without written order. *Id*. at cover. On July 30, 2000, this Court dismissed petitioner's federal habeas challenge as time-barred. *Gutierrez v. Johnson*, Civil Action No. 2:99-CV-0228. The United States Court of Appeals for the Fifth Circuit denied a certificate of appealability on December 5, 2000. *Gutierrez v. Johnson*, No. 00-10851.

On May 25, 2000, June 23, 2000, and June 27, 2000, during the course of the above-listed proceedings, petitioner sought a nunc pro tunc judgment reversing his conviction on the basis that the initial judgment was void because he had not been eligible for probation when he received the probated sentence when he pled guilty. Petitioner sought mandamus to compel the trial court to enter judgment nunc pro tunc and on August 25, 2000, the Seventh Court of Appeals of Texas declined to grant petitioner relief. *Gutierrez v. State,* No. 07-00-0392-CV, 2000 WL 1247676 (Tex. App.—Amarillo Aug. 25, 2000, no pet.). On December 19, 2000, however, the Seventh Court of Appeals granted the mandamus action finding the initial conviction and sentence void. *Gutierrez v. State,* No. 07-00-0482-CV, 2000 WL 1854772 (Tex. App.—Amarillo Dec. 19, 2000). On December 27, 2000, the trial court set aside the conviction and sentence.

Petitioner then proceeded to trial on the original charge of aggravated sexual assault of a child. The Court of Appeals for the Seventh District summarized the trial testimony as follows:

> M.C., who was eleven years old at the time of the incident, testified that appellant took her to his house at approximately 2:00 a.m. while M.C.'s mother was at a hospital with appellant's ill wife. M.C. related that appellant took his pants off, took her pants off, climbed on top of her on the couch and forced his penis into her vagina. She testified that she pushed him away, but he forced his penis into her a second time. On cross-examination M.C. testified that she did not see appellant's penis, his hand was in her crotch area, and that the penetration of her vagina might have been by appellant's finger. Appellant testified that M.C. took her own clothes off, he took his clothes off except for his underwear, and that M.C. sat on his lap while they were in a state of undress. He denied touching her in the crotch area or putting his penis in her vagina. He disavowed a sworn, written statement he gave shortly after the incident in which he professed in part that (1) he had been drunk during the episode at his house, (2) both M.C. and he were naked below the waist at some point, (3) he thought that she sat on him once when their clothes were off, and (4) he did not remember having sex with her, was pretty sure he did not have sex with her, but dozed off one time and did not know what happened. The statement was introduced into evidence.
>
> A rape exam was performed on M.C. at approximately 11:00 p.m. on the date of the alleged incident. M.C. had bathed and cleaned herself during the day, before she reported the incident. The exam report showed that M.C.'s panties tested positive on a presumptive blood test. According to the physician who performed the rape exam, M.C.'s hymen had a hole which was caused by something penetrating it, although he could not tell what the penetrating object was. The exam did not show evidence of bruising or trauma in M.C.'s genital area. Semen was not detected on M.C. or her clothes as a result of tests from the exam.

*Gutierrez v. State,* No. 07-01-0334-CR, 2003 WL 22472179, at *1-*2 (Tex. App.—Amarillo Oct. 31, 2003, pet. ref'd). At the conclusion of the trial, the jury found petitioner guilty of aggravated sexual assault of a child and sentenced him to fifty year's imprisonment and a fine of $10,000. Petitioner directly appealed his conviction and sentence, and the Court of Appeals for the Seventh District affirmed the judgment on October 31, 2003. *Gutierrez v. State,* No. 07-01-0334-CR, 2003 WL 22472179 (Tex. App.—Amarillo Oct. 31, 2003, pet. ref'd). Petitioner's petition for discretionary review was refused by the Texas Court of Criminal Appeals on April 21, 2004. *Gutierrez v. State*, PDR No. 2022-03.

On May 16, 2005, petitioner filed an application for a state writ of habeas corpus challenging his conviction. *Ex parte Gutierrez*, App. No. 38,985-02. On September 14, 2005, the Texas Court of Criminal Appeals denied the application without a written order. *Id.* at cover. On September 23, 2005, petitioner filed the instant application for federal habeas relief in this Court.[2]

## II.
## <u>PETITIONER'S ALLEGATIONS</u>

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. His fifty-year sentence is disproportionate to the crime committed, which violates the Eighth Amendment;

2. The prosecutor failed to disclose the probationary status of the victim for confrontation and cross-examination purposes and failed to disclose the criminal records of two of the State's witnesses;

3. The prosecutor failed to disclose the videotaped statement of the victim taken by Child Protective Services;

4. The prosecutor failed to disclose blood evidence purported to be on the victim's shorts;

5. The trial court abused its discretion by allowing the admission of the victim's "outcry statement";

6. Petitioner was denied his right to confront and cross-examine the victim because he was denied a copy of her videotaped statement;

7. The trial court abused its discretion by allowing the introduction of State's Exhibits 3, 4, and 5, evidence of theft convictions;

8. The prosecutor committed misconduct in exercising his peremptory strikes;

9. The prosecutor committed misconduct by offering into evidence a Department of Public Safety (DPS) report and by arguing improperly about the report;

---

[2] *See Spotville v. Cain*, 149 F.3d 374, 375 (5th Cir. 1998) (establishing "a *pro se* prisoner's habeas petition is filed, for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing").

10. The prosecutor committed misconduct by offering into evidence three prior misdemeanor theft convictions during the guilt-innocence phase of trial;

11. The statutorily mandated jury charge violates the Constitution because it requires erroneous instructions about the effect of good conduct time and parole;

12. Point of Error 12 is a repetition of Point of Error 11, and petitioner has argued the two points of error together;

13. Erroneous information was contained in the punishment phase charge, *i.e.,* the language about how long he would have to serve before becoming parole eligible;

14. The trial court erred by including the language complained of in Point of Error 13. (Petitioner has again argued these two points of error together and they will be addressed as such herein);

15. Counsel was ineffective because he failed to attend a pre-trial conference and hearing and failed to file a motion for discovery of evidence;

16. Counsel was ineffective in failing to object to the prosecutor's inappropriate use of his peremptory strikes;

17. Counsel was ineffective for failing to file a motion to quash the indictment and for failing to file a writ of habeas corpus on the double jeopardy issue;

18. Counsel was ineffective for failing to introduce qualified medical expert testimony to rebut the state's medical witness;

19. Counsel was ineffective for failing to object correctly to the introduction of the DPS report about blood evidence on the victim's shorts;

20. Counsel was ineffective for failing to object to the introduction of evidence of petitioner's misdemeanor convictions for theft;

21. Counsel was ineffective for failing to move the trial court to include a lesser included offense instruction;

22. Counsel was ineffective for failing to object and/or object correctly to the inclusion of language in the jury charge about petitioner's eligibility for parole;

23. Counsel was ineffective for failing to object and/or object correctly to the inclusion of language in the punishment charge about petitioner's eligibility for parole;

24. The prosecutor failed to follow the rules of evidence to properly admit the DPS report and improperly argued to the jury about the clothes in such report;

25.    Counsel was ineffective for failing to go to the judge instead of the jury for punishment at sentencing;

26.    Counsel was ineffective for failing to argue mitigating circumstances;

27.    The evidence is factually insufficient to sustain the verdict;

28.    The evidence is legally insufficient to sustain the verdict; and

29.    Petitioner's prior conviction and sentence for the same offense were final and thus the subsequent verdict and sentence are illegal under the double jeopardy clause.

III.
EXHAUSTION AND PROCEDURAL BAR

Respondent contends that petitioner failed to exhaust his state remedies with respect to one of his ineffective assistance of counsel claims by not presenting the issue to the state court during his direct appeal or in his state habeas application, but does not move for dismissal on this ground.

IV.
STANDARD OF REVIEW

This case was filed subsequent to the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the standards of review set forth in the AEDPA apply to this case. *Lindh v. Murphy*, 521 U.S. 320, 327, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, all factual determinations made by a state court shall be presumed to

be correct and such presumption can only be rebutted by clear and convincing evidence presented by petitioner.  28 U.S.C. § 2254(e).

Petitioner has filed one state habeas application which was considered by the Texas Court of Criminals Appeals relating to Cause No. B2720-9209.  The Court of Criminal Appeals denied *Ex parte Gutierrez*, App. No. 38,985-02, on September 14, 2005, without written order.  The ruling of the Texas Court of Criminal Appeals on the grounds presented constitutes an adjudication of petitioner's claims on the merits.  *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

V.
MERITS

Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated.  In determining whether an error was so extreme or a trial so fundamentally unfair, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

A.
Claim 1 - Disproportionate Sentence

Petitioner argues his fifty-year sentence is disproportionate to the crime committed under the Eighth Amendment.  As articulated by respondent, the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 291-92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983), established a three-prong analysis to address Eighth Amendment claims.  Petitioner, however, does not appear to allege a fifty-year sentence is disproportionate to the crime of aggravated sexual assault of a child but that it is disproportionate to the offense of indecency with a child.  Consequently, any *Solem* analysis is not applicable.

Petitioner argues he was charged with aggravated sexual assault of a child in which he was

alleged to have penetrated the sexual organ of the female victim with his penis.  Petitioner denies

this, instead arguing he is guilty only of indecency with a child stating, "Applicant was admittedly

in violation of indecency of a child under Texas law, but knows beyond all doubt that he did not

penetrate the sexual organ of [the victim] with his penis.  The perforation that Dr. Maldonado could

visually see was caused by Applicant's finger." (Petitioner's Brief at 11).  The jury found petitioner

guilty of the first-degree felony offense of aggravated sexual assault of a child, the penalty for which

is (1) life imprisonment or (2) a term of not more than ninety-nine years or less than five years.  TEX.

PENAL CODE ANN. § 12.32(a) (Vernon 2003).  Petitioner was sentenced to fifty years, which is a mid-

range sentence.  As argued by respondent, even if the jury had found petitioner guilty of penetrating

the victim's sexual organ with his finger, the trial court would still have charged him under the same

aggravated sexual assault of a child statute and he would have been subject to the same range of

punishment.  To the extent petitioner's actual claim is that there was insufficient evidence to find

him guilty of the crime charged, such claim will be addressed below.  Petitioner's first claim,

alleging a disproportionate sentence, however, is without merit.

B.
Claim 2 - Prosecutorial Disclosures

Petitioner alleges the prosecutor failed to disclose the probationary status (and criminal

record) of the crime victim for confrontation and cross-examination purposes and failed to disclose

the criminal records of two of the state's witnesses.  First, petitioner contends the victim's mother

was arrested for fighting in a café, but he does not recite whether the woman was ever convicted.

Second, petitioner alleges State's witness Abdon Rodriguez was arrested for possession of cocaine

and forced to resign from the police force, but was never prosecuted.  Third, petitioner contends the

victim had a felony criminal record, as evidenced by her detention status in the Tulia Independent

School District.

On January 10, 2001, the trial court entered a Standard Discovery Order which ordered the State to produce, "The criminal history, as recorded in the TCIC records, of all persons who could, within reasonable probability, be called as witnesses for the prosecution, together with all other purported criminal activities of such persons of which the prosecution has actual knowledge, which would be admissible for impeachment under Rule 609, Texas Rules of Evidence." (Clerk's Record (hereinafter C.R.) at 225-26). At the time of petitioner's trial in 2001, Rule 609 of the Texas Rules of Evidence read,

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.
>
> . . .
>
> (d) Juvenile Adjudications. Evidence of juvenile adjudications is not admissible, except for proceedings conducted pursuant to Title III, Family Code, in which the witness is a party, under this rule unless required to be admitted by the Constitution of the United States or Texas.

With respect to the adult witness Sylvia Cruz, petitioner has not shown she was ever convicted of the alleged assault and/or fighting charge. Further, simple or misdemeanor assault is not a felony nor is it a crime of moral turpitude. With respect to adult witness officer, Abdon Rodriguez, petitioner alleges he was charged with drug possession, but petitioner never demonstrates Rodriguez was convicted of that charge. Finally, petitioner alleges the minor victim in this case was convicted of a felony but that such conviction was sealed. Consequently, per Rule 609, any such juvenile conviction, if it existed, was not admissible. Petitioner's claim is either based on mere accusations, unsupported by actual convictions, or on inadmissible evidence. It is without merit and must fail.

To the extent petitioner alleges counsel was ineffective for failing to interview these

witnesses and/or obtain their criminal records, such claim is without merit. Petitioner has not established that if counsel had done so the information obtained would have been admissible. Petitioner has failed to demonstrate prejudice.[3]

## C.
## Claim 3 - Videotaped Statement of Victim

Petitioner alleges the prosecutor failed to disclose a videotaped statement of the victim taken by Child Protective Services. Petitioner does not know this tape exists but states he believes it exists because his former counsel filed a discovery motion seeking such tape. In fact, such a Motion for Discovery was filed in 1992 in the original proceeding and counsel sought, "A video of the testimony of [M.C.] concerning the above captioned case." (C.R. at 13). Petitioner alleges this amounts to a *Brady* violation and has deprived him of his right to impeach the credibility of the witness because he believes such tape will show the victim never made the allegations at issue.[4] Petitioner's claim is conclusory. Petitioner has not demonstrated such a tape exists and has not shown any recorded testimony was exculpatory and/or material. As stated by respondent, the prosecution never mentioned this videotape at trial nor did the victim testify such a tape existed. (Reporter's Record (Hereafter R.R.), Vol. 3 at 80-95). Further, a Standard Discovery Order was in effect and the prosecution was obligated to disclose, "witness statements that provide exculpatory evidence for the defense." (C.R. at 226). Petitioner has failed to meet his burden to show the prosecution had exculpatory evidence which it failed to disclose. Petitioner's claim is without merit.

---

[3] The *Strickland* standard for analyzing a claim of ineffective assistance of counsel is set forth below but, in short, petitioner must show counsel's errors caused him prejudice, something petitioner cannot demonstrate.

[4] If the prosecution suppresses evidence favorable to an accused and material to either guilt or punishment, irrespective of the good faith of the prosecution, such suppression violates due process. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). To state a *Brady* claim, the defendant must demonstrate (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to guilt or punishment, and (4) the defendant's late discovery of the allegedly favorable evidence was not the result of a lack of due diligence. *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).

## D.
## Claim 4 - Blood Evidence

Petitioner next claims the prosecutor failed to disclose blood evidence purported to be on the victim's panties prior to trial. The Texas Department of Public Safety (DPS) Crime Lab, on October 9, 1992, analyzed various articles of clothing, blood, saliva, and vaginal swabs taken from the victim. (C.R., Vol. 2 at 415-416). The lab report stated, "Stains . . . on the panty crotch were positive to a presumptive test for the presence of blood, however no attempt was made to determine the origin or type." (*Id*. at 416). To the extent petitioner claims this was a violation of his *Brady* rights (*see* footnote 4), the claim fails. Petitioner has not shown how this evidence was favorable to him as required by *Brady*.

To the extent petitioner argues this evidence should have been disclosed prior to trial under the Standard Discovery Order as a scientific report, (C.R., Vol. 2 at 226), petitioner has failed to show the report was not provided to defense counsel.

To the extent petitioner argues the report was improperly admitted because a police officer and not the criminologist testified as to its authenticity, such argument has been waived. At trial, when the DPS report was tendered into evidence by the prosecution, the defense stated it had no objection. (R.R., Vol. 3 at 60-61). Additionally, petitioner has not demonstrated this report was material to his case. As argued by petitioner, the lab report did not determine the origin of the blood and the victim's mother testified at trial she saw no blood on the victim's panties when they were given to police, (R.R., Vol. 3 at 123). This claim is without merit.

## E.
## Claim 5 - Outcry Statement

In his fifth point, petitioner challenges the admission of the victim's mother's testimony. At trial, M.C.'s mother testified that her daughter told her petitioner "did something" to her and that

she hurt.[5] (R.R., Vol. 3 at 26). Petitioner contends the trial court abused its discretion by allowing the mother's testimony regarding M.C.'s outcry statement to her.

Petitioner's argument amounts to a claim that the state misapplied its own law, specifically that it misapplied section 38.072 of the Texas Code of Criminal Procedure, which allows the hearsay statements of a child sexual assault victim if the person relating the statements is over age eighteen and was the first person to whom the child made a statement about the assault. In order to prevail in federal court on an argument that the state court violated its own, state law, a petitioner "must demonstrate that such a violation occurred and that the violation rendered the state proceedings fundamentally unfair." *Story v. Collins*, 920 F.2d 1247, 1255 (5th Cir. 1991); *see Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (stating "It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law").

Petitioner in this case fails to establish any state law violation. First, at the hearing on whether M.C.'s mother was the proper outcry witness under section 38.072 of the Texas Code of Criminal Procedure, the mother established that her daughter, who was then eleven years old, told her about the assault on the day it had occurred. (R.R., Vol. 3 at 20-24). Furthermore, the mother's testimony before the jury was limited to the statements M.C. had made directly to her mother regarding the assault. The State additionally met all other state law requirements of outcry witness testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 §2(b).

Even assuming that the trial court erred, however, in allowing the mother's testimony, petitioner has failed to demonstrate that such an admission made the state proceedings

---

[5] The entirety of the mother's hearsay testimony regarding what M.C. told her is as follows:
Q:    . . . And tell me what [M.C.] said to you?
A:    She said that - - She said, "Mama, it hurts." And I said, "What do you mean it hurts? What did - - Did he hurt you? Did he do anything to you?" She said, "Yeah, he did something to me."
(R.R., Vol. 3 at 26).

fundamentally unfair. Not only did petitioner's attorney have the opportunity to cross-examine the mother regarding the statements, but his attorney had ample opportunity to cross-examine M.C. herself on the statements. *See Story*, 920 F.2d at 1255-56. This claim is without merit.

F.
Claim 6 - Denial of Right to Cross-Examine

Petitioner claims he was denied his right to confront and cross-examine the victim because he was denied a copy of her videotaped statement. Petitioner's claim is conclusory. Further, as discussed above in Subparagraph C, petitioner has not demonstrated such a videotape exists and/or that any such videotape contained impeachment information. This claim is without merit.

G.
Claim 7 - State's Exhibits 3, 4, and 5 - Prior Conviction Evidence

Petitioner argues the trial court abused its discretion by allowing into evidence State's Exhibits 3, 4, and 5 as evidence of petitioner's prior theft convictions. The evidence was admitted by the trial court during a voir dire examination on the voluntariness of petitioner's post-incident statement to police and the *Miranda* warnings given. (R.R., Vol. 3 at 43-49). The three exhibits were admitted for purposes of the hearing only, which was conducted outside the presence of the jury.

State evidentiary rulings, even erroneous ones, are subject to federal habeas review only if they constitute a denial of fundamental fairness under the Due Process Clause. As stated by respondent, "The test applied to determine whether trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)." (Respondent's Brief at 13). At trial, petitioner testified on voir dire he did not know what he was signing when he signed the *Miranda* rights form and that he did not know his rights. (R.R., Vol. 3 at 44). The prosecution attempted to impeach petitioner with the introduction of his theft convictions by showing he had

previously been involved with law enforcement. The three incidents of misdemeanor theft occurred on November 11, 1994, September 3, 1995, and July 10, 1995 (C.R., Vol. 2 at 393, 398, 406) —subsequent to the aggravated sexual assault at issue here. Defense counsel objected because the incidents were subsequent to the statement made to police in June of 1992, but the trial court allowed the evidence for the purposes impeachment in the voir dire hearing only. (R.R., Vol. 3 at 46). Petitioner testified at the same time that he wanted to make a statement and that he made his statement to police voluntarily. (R.R., Vol. 3 at 45). The trial judge held the statement to police was made voluntarily after proper warning. (R.R., Vol. 3 at 49). The decision of the trial judge did not render petitioner's trial fundamentally unfair and the state habeas court decision rejecting this claim was not unreasonable.

## H.
### Claim 8 - Peremptory Strikes

Petitioner argues the prosecutor committed misconduct in exercising peremptory strikes. Specifically, petitioner claims the prosecution struck at least seven of the venire members because they were Hispanic. Petitioner's claim amounts to a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), that the prosecutor exercised his peremptory strikes in a racially discriminatory manner. However, petitioner's claim must fail because he did not object at trial to the prosecutor's strikes. Because he did not object, petitioner is constitutionally barred from asserting this claim on federal habeas review. *See Ward v. Whitley*, 21 F.3d 1355, 1366 (5th Cir. 1994).

Petitioner appears to further argue he was protected from such discriminatory strikes by Article 35.261 of the Texas Code of Criminal Procedure, which permits a trial court, upon defense motion, to dismiss the jury array and call a new array if an identifiable race is present and it can be shown the prosecution exercised its strikes based upon race. Again, as acknowledged by petitioner, such a challenge must be made at trial before the jury is impaneled. (Petitioner's Brief at 41).

To the extent petitioner claims counsel was ineffective for failing to make either a *Batson* challenge or an Article 35.261 challenge, petitioner has failed to show counsel had a basis to do so. The State struck ten potential jurors with the following names: Zula Culwell, Tricia Norris, Emma Castillo, Jolene Arnold, Dystani Frausto, Barbara Morgan, Rodney Harris, Angela Cooper, Dolores Rossi, and Betty Owens. (C.R., Vol. 2 at 378-379). Defense counsel struck Peggy McKelvy, Nellie Hernandez, Marie Rusher, Mrs. James M. Hill, Barbara Morgan, Rodney Harris, Belinda Luna, Patricia Evans, Angela Cooper, and John Vans. (C.R., Vol. 2 at 380-381). Petitioner's claim is conclusory and petitioner has failed to demonstrate the excluded jury members were predominately Hispanic or that any valid *Batson* challenge could be made. This claim is without merit.

I.
Claims 9 and 24 - DPS Report

Petitioner argues the prosecutor committed misconduct by offering into evidence a Department of Public Safety (DPS) report and by improperly arguing about the report. Petitioner cites *Cole v. State of Texas*, 839 S.W.2d 798 (Tex. Crim. App. 1990), in support of his argument. In *Cole*, the defendant was on trial for aggravated sexual assault. A DPS forensic chemist-toxicologist conducted testing on various items taken from the victim including clothing, vaginal swabs and fingernail clippings. At trial, the forensic chemist who tested the materials did not testify; instead, a supervising chemist with the same lab was allowed to testify about the tests and results. The trial judge admitted the reports prepared by the non-testifying DPS chemist. The defendant was convicted and appealed. The Texas Court of Criminal Appeals determined the DPS chemist was considered "other law enforcement personnel" under Rule 803(8)(B) and thus his report was not admissible. Additionally, the Texas Court of Criminal Appeals held the reports, not admissible under 803(8)(B), could not be admitted under Rule 803(6). *Cole*, 839 S.W.2d at 806. The case was remanded for a harm analysis pursuant to Rule 81(b)(2), Texas Rules of Appellate Procedure.

In petitioner's case, when the State tendered the DPS report into evidence, the defense

specifically stated it had no objection to the admission of the evidence. (R.R., Vol. 3 at 60-61). Therefore, petitioner's claim regarding the DPS report was waived at trial—by not objecting to the admission of the evidence, petitioner waived any future claims regarding that evidence. On habeas review, this Court cannot consider the merits of an argument waived by the petitioner at trial.

Further, even if petitioner is correct that the DPS report was improperly admitted into evidence through the testimony of the investigating police officer, Abdon Rodriguez, he cannot prevail. The issue to be determined (if petitioner could, in fact, assert such an issue) is whether the error was harmful to petitioner. At trial, the victim testified before the jury as to how petitioner assaulted her. (R.R., Vol. 3, 80-95). Contrary to petitioner's argument, the victim did not testify that there was no blood on her panties; instead, she agreed that any blood found there would have come from the night of the incident forward. (R.R., Vol. 3 at 95). The victim's mother, however, testified that when she turned over her daughter's clothing to police she did not notice anything on the clothing. (R.R., Vol. 3 at 123).

Additionally, of Mr. Rodriguez's nearly twenty pages of testimony before the jury, his testimony regarding the DPS report consists of less than one page. And the extent of this very limited testimony consisted of Mr. Rodriguez saying that he did not recall what the report said on the subject of any blood on the victim's panties. (R.R., Vol. 3 at 61). Finally, review of the DPS report itself shows no semen was detected on any of the submitted items, and although stains on the victim's t-shirt and panty crotch were positive to a presumptive test for the presence of blood, no determination as to the origin of the blood was made. (C.R., Vol. 2 at 416). In short, the DPS report does not contain information particularly damaging to petitioner, especially in light of the mother's and Mr. Rodriguez's testimony. It therefore cannot be said the state habeas court's rejection of this claim was objectively unreasonable.

Petitioner also argues the prosecution improperly argued about this blood evidence in

closing.  Review of prosecutor's statement shows he did mention the blood evidence.  He argued as follows:

> The Court has given you the Charge, but one of the things that I would like to point out to you, that's in evidence, is you go to this DPS report, and you go to the second page, right here, "were positive to a presumptive test for the presence of blood." That's in the panty crotch area of the clothes that were taken, that she was wearing the night of June twenty-se -- or June 20th of 2000.  Where did the blood come from? I submit to you it came from that -- what the doctor said was a penetrated hymen.

(R.R., Vol. 3 at 136-137).  While the prosecution's argument makes this issue a closer one, it does not entitle petitioner to relief.  The prosecution's argument implied the presence of blood supported the testimony of Dr. Maldonado, the emergency room physician who examined the juvenile victim at the time of the incident and testified there was a small hole in her hymen.  (R.R., Vol. 3 at 71). It cannot be said the prosecution's argument was improper in light of the admission of the report, with no objection by defense counsel, in light of the harmless error analysis set forth above and in light of testimony from the victim's mother that there was no blood on the victim's clothes when she turned them over to police.  Petitioner's claim is without merit.

## J.
## Claim 10 - Prior Convictions

Petitioner argues the prosecutor committed misconduct by offering into evidence three prior misdemeanor theft convictions during the guilt-innocence phase of trial.  In actuality, as discussed in Subparagraph G, the convictions were offered during a voir dire proceeding, outside the presence of the jury.  For the reasons set forth above, this claim is without merit.

## K.
## Claims 11, 12, 13 and 14 - Jury Charge

Petitioner contends the punishment-phase jury charge violates the constitution because it requires instructions concerning the effect of good conduct time, the possibility of parole, and the requirements for becoming parole-eligible.  As stated by respondent, improper jury instructions do not generally form the basis for federal habeas relief.  (Respondent's Brief at 14 citing *Galvan v.*

*Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002). "In examining habeas claims of improper jury instructions, the inquiry is not whether there was prejudice to the petitioner, or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan*, 293 F.3d at 764 (internal citation omitted). Rather, "the relevant inquiry is whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 399, 38 L. Ed. 2d 368 (1973)). Moreover, "there is a strong presumption that errors in jury instructions are subject to harmless-error analysis." *Id.* Additionally, on habeas review, a federal court is barred from reviewing a state court decision that rests upon adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 1851-52, 158 L. Ed. 2d 659 (2004).

In this case, after both sides rested, the trial court conducted a hearing to determine any objections that either side had to the jury charge. At that time, petitioner did not raise the same objection as he raises in his federal habeas petition. Under state rules, therefore, he has waived any such objection to the jury charge. *See* TEX. R. APP. PROC. 33.1(a)(1). Because he did not preserve this issue for state review, it will not now be considered on federal habeas petition. *See Dretke*, 541 U.S. at 392, 124 S. Ct. at 1851-51.

Furthermore, petitioner complains of a portion of the jury charge that all state trial courts were required to give under state law. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp. 2007) (requiring the trial court's jury instruction during the punishment phase to inform the jury of the existence and mechanics of parole law and good-conduct time). The trial court is required to give this charge even if parole and good-conduct time is completely irrelevant to the defendant. *See id.* This statute has received extensive and critical criticism by the Court of Criminal Appeals, but has ultimately been upheld. *See Luquis v. State*, 72 S.W.3d 355, 365 (Tex. Crim. App. 2002). This Court cannot now reevaluate the state law on any grounds other than the instruction's

violation of Due Process Rights.  *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116

L. Ed. 2d 385 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6, 103 S. Ct. 843, 853,

n.6, 74 L. Ed. 2d 646 (1983)) (refusing to reconsider a jury instruction given in state court because

"the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the

wisdom of state evidentiary rules").

Therefore, because petitioner presents an issue of state law, this Court should not review the

substance of petitioner's argument.  *See Dretke*, 541 U.S. at 392, 124 S. Ct. at 1851-52.  This claim

fails.

L.
<u>Claims 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, and 26 - Ineffectiveness of Counsel</u>

Petitioner makes a myriad of allegations that counsel was ineffective.  In order to constitute

ineffective assistance of counsel, counsel's performance must have fallen below an objective

standard of reasonableness as determined by the norms of the profession.  Counsel's performance

is reviewed from counsel's perspective at the time of trial, not from hindsight.  *Strickland v.*

*Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984).  A reviewing

court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that

counsel's performance falls within the wide range of reasonable professional assistance.  *Id.*

The proper standard for judging a petitioner's contention that he is entitled to relief on the

ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland.*  Under the

*Strickland* standard, a petitioner must show defense counsel's performance was deficient.  *Id.* at 687,

104 S. Ct. 2064.  This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States

Constitution.  *Id.* at 688, 104 S. Ct. 2064.

A petitioner must also show counsel's deficient performance prejudiced the defense.  *Id.* at

687, 104 S. Ct. 2064.  To establish this prong, petitioner must show counsel's errors were so serious

as to deprive petitioner of a fair trial. Specifically, as set forth in *Creel v. Johnson*, 162 F.3d 385 (5th Cir. 1998), to prove prejudice petitioner must show (1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different, and (2) that counsel's deficient performance rendered the trial fundamentally unfair. *See Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*, 113 S. Ct. at 844. A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993). Further, the court need not consider the deficiency prong if no prejudice has been demonstrated. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2064.

Petitioner first complains counsel was ineffective for failing to attend a pre-trial hearing. As stated by the respondent, the prosecutor failed to attend as well. Both parties were admonished at trial by the judge because pre-trial matters were repeatedly being addressed at trial, inconveniencing the jury. (R.R., Vol. 3 at 49). Clearly, the pre-trial matters were addressed by the trial judge at trial. Petitioner has not shown there were any issues which were not addressed and has failed to show prejudice. Petitioner's claim is without merit.

Petitioner also claims counsel was ineffective for failing to file a motion to quash the indictment and failing to file a writ of habeas corpus on the double jeopardy issue. As discussed below, petitioner's double jeopardy claim is without merit and counsel was not required to file a frivolous motion. Petitioner has failed to show prejudice. This claim is without merit.

Petitioner claims counsel was ineffective for failing to present a medical expert to rebut the State's evidence that the victim's hymen showed signs of penetration by an object. Petitioner has not shown any such medical witness existed or what this rebuttal expert's testimony would have been. Therefore, this claim fails.

Petitioner argues counsel was ineffective for allowing the State to introduce the DPS report, which was created by a criminologist with the DPS, during the testimony of officer Abdon Rodriguez, who was not qualified as a forensic expert. The report was introduced as State's Exhibit Number 6 at trial as follows:

> [State attorney]:        Tender into evidence, at this time, State's Exhibit Number 6.
>
> [Defense attorney]:    No objection, Your Honor.
>
> . . .
>
> [State attorney] Q.     In State's Exhibit Number 6, does it refer to some blood on the -- on the panties, or do you know? Do you recall?
>
> A.     I don't recall.
>
> Q.     It would be reflected in what the jury is now reading; is that correct?
>
> A.     Yes, sir, that's correct.
>
> Q.     And if refers that no semen was detected or submitted on any item; is that correct?
>
> A.     Yes, sir, that's correct.

(R.R., Vol. 3, pg. 62).

Initially, petitioner fails to overcome the strong presumption that his attorney's actions were not part of a reasoned trial strategy and were therefore deficient. Trial counsel could have realized that part of the DPS report was favorable for petitioner in that it showed that there was no semen found. This possible strategy is bolstered by trial counsel's closing arguments

> There was no evidence in that Exhibit Number 6, the DPS report, the lab report. There's no evidence of semen or any kind of male sperm or other male excretion in that - - in that test, in that report.
> He [the State's attorney] talked about the blood. That blood - - Again, that blood, if you read that report, you'll find that they didn't do any kind of test on it to determine the source of the blood, there's no indication in that report how long it had been there, whether it was dry blood, fresh blood, there's no indication of that. So that, again, is no - - doesn't really tell us anything.

(R.R., Vol. 3 at 141-42).

Additionally, trial counsel could have thought that any objection to the report would have brought more attention to the report than desired. As it was, the whole of the testimony from the DPS report at that time constituted less than one page of the reporter's record. The petitioner must overcome the strong presumption that counsel's actions were deliberate and not deficient. The statements of petitioner's trial attorney, in which the attorney attempted to use the DPS report to benefit the defense serve to only bolster the presumption, and petitioner has provided no evidence to overcome it. *See Strickland*, 466 U.S. at 690, 104 S. Ct. 2066.

Furthermore, assuming arguendo that petitioner's trial counsel was deficient for failing to object, petitioner provides no evidence or analysis as to how, specifically, counsel's failure to object changed the result of the trial. *See id.* at 694, 104 S. Ct. at 2068. As stated by respondent, the chemist who tested the material in the report could have been called to testify. Alternatively, nothing in the report directly implicates petitioner, *i.e.*, there was no semen found and the blood present was of an unknown origin. Petitioner has failed to show prejudice. This claim is without merit.

Next, petitioner argues counsel failed to object to the use of his prior theft convictions for impeachment. As discussed above, these convictions were raised outside the presence of the jury. The police officer, Abdon Rodriguez, who read petitioner his rights testified and stated petitioner understood his rights, waived those rights, and proceeded to give a statement about the incident. (R.R., Vol. 3 at 36-40). Petitioner testified at the time he was questioned by police he did not understand his *Miranda* rights but that he did not tell the officer, "Probably because he didn't ask." (R.R., Vol. 3 at 45). Petitioner, however, both on direct and on cross examination testified he was willing to make a statement and he did so voluntarily. (*Id.*). The trial court had ample evidence upon which to find petitioner knowingly and voluntarily gave the statement.

Petitioner complains counsel should have moved for a lesser-included offense charge in the

jury instruction, *i.e.*, that the evidence may have shown his finger, and not his penis, penetrated the sexual organ of the victim. As discussed above, penetration by petitioner's finger would have constituted aggravated sexual assault, not indecency with a child. Petitioner has shown neither deficient performance nor prejudice.

Petitioner complains counsel failed to object and/or object correctly to the jury charge and punishment phase jury instructions which contained erroneous information about good time credits and parole. As discussed above, petitioner's underlying claim on this issue is without merit. Petitioner has failed to show deficient performance or prejudice.

Petitioner claims counsel improperly opted to have the jury set punishment as opposed to the trial judge. Petitioner asserts had counsel not done so, the punishment would have been capped at the original ten-year sentence. As stated by respondent, the original ten-year sentence was the result of a plea bargain in the original proceeding. The trial judge would not have been obligated to assess such a sentence. Instead he would have had the same range of punishment as did the jury. Counsel's decision to have the jury assess punishment can be construed as trial strategy. The *Strickland* analysis presumes counsel's strategic decisions were not ineffective. 466 U.S. at 690, 104 S. Ct. at 2066. Unless a strategic decision was, "so ill chosen that it permeates the entire trial with obvious unfairness," it cannot be the basis for a constitutional claim of ineffective assistance. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (internal citation omitted). Petitioner has not met his burden to prove counsel's decision resulted in an obviously unfair trial, and further, petitioner has failed to show he was prejudiced by counsel's choice.

Finally, petitioner argues counsel should have argued mitigating circumstances. Respondent argues this claim is procedurally barred because petitioner failed to raise it on direct review or state habeas review. Procedural bar aside, petitioner argues counsel should have called five character witnesses on his behalf. Petitioner asserts the witnesses were subpoenaed and were present at the

trial. (Petitioner's Brief at 77). Review of the record shows these five witnesses were subpoenaed

for trial. (C.R., Vol. 2 at 345-361. Petitioner, however, has not demonstrated what the testimony

of these witnesses regarding his character would have been or how it would have changed the

outcome of trial. Additionally, counsel's decision not to call these witnesses would have been a

matter of trial strategy and petitioner has failed to demonstrate such was so ill chosen that it

permeated the entire trial with obvious unfairness. *See Lockhart*, 506 U.S. at 372, 113 S. Ct. at 844.

This claim is without merit.

## M.
## Claims 27 and 28 - Sufficiency of the Evidence

Petitioner claims the evidence was legally and factually insufficient to sustain his conviction.

As stated by respondent, a claim of legal sufficiency is the only one available in the federal habeas

forum. *Pemberton v. Collins*, 991 F.2d 1218, 1224 (5th Cir. 1993). In addressing a sufficiency of

the evidence claim, the federal habeas court must view the evidence, "in the light most favorable to

the prosecution, [and determine whether] *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.

Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). On direct appeal, the court of appeals applied *Jackson* and

found the evidence sufficient to support the conviction. *Gutierrez v. State*, No. 07-01-0334-CR,

2003 WL 22472179 at *1-2 (Tex. App.—Amarillo Oct. 31, 2003, pet. ref'd). Petitioner has not

shown this decision or the state habeas court's rejection of this claim was objectively unreasonable.

This claim fails.

## N.
## Claim 29 - Double Jeopardy

Finally, petitioner claims his conviction violates double jeopardy protections because his

original conviction was not void. Petitioner initially pled guilty in this case as the result of a plea

bargain and received probation. His probation was revoked when petitioner failed to comply with

its terms. It was petitioner who appealed and who argued his original conviction and sentence were void. Petitioner received the relief he sought when the court of appeals agreed with him and determined the initial conviction and sentence were void. Thereafter, petitioner opted to go to trial, was convicted, and received a fifty-year sentence. At that time, petitioner again appealed, this time alleging the original conviction and sentence were *not* void. The court of appeals properly held petitioner was estopped from asserting this claim. *See Gutierrez*, 2003 WL 22472179 at *3. The appellate court relied upon the invited error doctrine stating, "Appellant's actions in procuring the very judicial actions on which he now bases his claim of error forfeited his right to assert a double jeopardy claim based on such actions." *Id*. The state habeas court declined to grant relief on this issue, and petitioner has not shown such decision was objectively unreasonable. This claim is without merit.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner RICARDO GUTIERREZ, be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 6th day of January 2009.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).